PEARL R. BRADY, APPELLANT, v. STATE INSURANCE COM-
PANY, APPELLEE.

FILED DECEMBER 9, 1916.    No. 19014.

1. **Election of Remedies.** One who·has voluntarily chosen an appro-
priate legal remedy and obtained full satisfaction therefor, with
knowledge of the facts and of his rights, will not ordinarily be
allowed to afterwards resort to an inconsistent remedy involving a
· contradiction of the grounds upon which he before proceeded.

2. **Insurance:** DESTRUCTION OF PROPERTY: ELECTION OF REMEDIES.
Where the owner of a building obtains separate policies of insur-
ance thereon, one covering loss or damage by fire or lightning, and
the other by wind or tornado, and the building is wholly destroyed,
partly by fire and partly by tornado, the amount written in one
policy cannot be recovered under the provisions of the valued
policy law on the ground that the building was wholly destroyed by
the elements therein insured against, when it appears that the as-
sured has demanded and obtained payment of the full sum written
in the other policy upon the claim that such building was wholly
destroyed by the elements therein insured against. Such claims
being clearly antagonistic to each other, the election to pursue the
remedy under one will be held to be a bar to the other.

APPEAL from the district court for Douglas county:
ALEXANDER C. TROUP, JUDGE. *Affirmed.*

. *I. J. Dunn* and *T. E. Brady,* for appellant.

*Stout, Rose & Wells, contra.*

FAWCETT, J.

On the evening of Easter Sunday, March 23, 1913, plain-
tiff's dwelling-house was completely destroyed, partly by
the terrible tornado which swept through the city of Omaha
about 6 o'clock that evening, and partly by fire. On Feb-
ruary 14, preceding the fire, plaintiff obtained from de-
fendant a policy of insurance in the sum of $2,000,.insuring
her building against loss or damage by fire or lightning.
At the same time, and as a part of the same transaction,
but for a separate agreed consideration, defendant also

issued to plaintiff a separate policy for the same amount, viz., $2,000, covering the same property against loss by tornado. Two days after the destruction of the building plaintiff executed and delivered to defendant sworn proofs of loss under the tornado policy, in which proofs she stated: "The total insurance on said property, or any part thereof, at the time of the tornado, including the above mentioned policy, was two thousand dollars, and no more." She also stated in the affidavit that the "sound value" of the building was $3,500; that the "total loss" thereof was $3,500; that the "total insurance" on the building was $2,000; that the "amount named in this policy" was $2,000; and that she "claimed under this policy" $2,000. Two days later, on March 27, the defendant paid the amount thus claimed in full. On the 8th day of November following she instituted the present action, to recover the amount stated in the fire insurance policy, above referred to. At the conclusion of the trial the district court directed a verdict for defendant. Plaintiff appeals.

The errors assigned are: that the court should not have directed a verdict for defendant; that the verdict is contrary to law, and not sustained by the evidence, but is contrary thereto. The petition is in the usual form. The answer denies generally all allegations of the petition, except as to the corporate capacity of defendant and the issuance of the policy sued upon, and pleads, specifically: (1) That by the terms of the policy it was provided that, "if a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease;" that the building was blown down and destroyed by tornado, so that it fell, not as the result of any fire or lightning, but solely as the result of wind and tornado; that there was no loss or damage to the building by fire or lightning prior to the time it fell as a result of the tornado; that the liability of the defendant, under the terms of the policy, immediately ceased the moment the building fell as the result of the tornado; and (2) that, concurrently with the execution of the fire

policy, and for a like term and amount, and upon the same property, defendant issued to plaintiff a tornado policy; that on March 23 the house was totally destroyed by wind and tornado. The answer also sets out the presentation of sworn proofs of loss under the tornado policy and settlement as above set forth, and alleges that by reason of the premises plaintiff is "barred and estopped from claiming that the said dwelling-house was not totally destroyed by tornado and wind, and from claiming that the same was destroyed or damaged by fire or lightning."

Plaintiff testified that on the evening in question she was on the back porch of the house, and saw the tornado approaching at a distance of about a block, and then observed flames, from 4 to 6 or 7 inches long, in a number of places along the roof of the porch, where the electric wires were fastened; that the tornado struck the house (which must have been practically immediately), moving it bodily about 10 or 12 feet north and a little to the west, where it stood partly on the foundation and partly off the foundation, leaning a little because of the slope of the ground; that, when the storm had passed, the house was standing apparently in good shape, except as described, and except the front porch, which was somewhat dilapidated, and possibly some windows broken; that the fire had increased in the meantime, and could be seen at the back of the house by looking through the front windows; that the house continued to burn with more or less force, depending upon how hard it rained; that, when she left there at the end of that time, the house was still standing, but burning generally all over; that, when she next saw the place, the following day, the house had been entirely burned and nothing but ashes and noncombustible portions of the house and furniture remained on the former site of the house.

Richard Brady (plaintiff's son) testified that, as soon as he reached the cellar, the house moved from over them and the south and west foundation walls of cement fell in on top of them; that, as soon as the storm passed, he climbed out from under the debris and out of the cellar;

that the house had been moved about 10 or 12 feet north and a little to the west; that it tilted a little on the foundation because of the slope of the ground; that the roof was still on the house and the house intact, except the front porch, which was somewhat damaged; that he did not go into the house, but could see things inside, which appeared to be all right; that the house was on fire generally; that when he left the house it was still blazing, most of it standing, except the back wall; that the next morning nothing was left but ashes and pieces of iron and portions of some bedsteads.

R. H. Randall (plaintiff's father) testified that he was a carpenter and contractor; that he built the house for plaintiff four years before the tornado, and described the character of the house. He testified that it would cost from $3,000 to $3,600 to construct one like it; that after the tornado had passed all of the north side of the west gable of the house was burning rapidly and flames were coming out of the roof in several places; that the house seemed to be in good condition, the roof and sides all there, but the roof of the porch seemed to be gone, and the house was tilted some because of the slope of the ground; that the sides of the house were all right, except leaning over; that it continued to burn until past midnight, when it was all burned up.

This is substantially all of the evidence that was given as to the condition of the house immediately before and immediately after it was struck by the tornado. Taking this testimony as true, it clearly establishes that but little damage was done to the house by the tornado, and that its total destruction was due to fire. In the light of this testimony, if there had been no fire the loss which defendant would have been compelled to pay, by reason of the tornado, would have been a nominal amount as compared with the amount of the insurance. Under this testimony, the defendant would not have been liable under the valued policy law for the destruction of the building, as it had not, by reason of anything which had been done by the tornado,

lost its distinctive character as a dwelling-house. It was still resting partly upon the foundation, and it would not have been a difficult or expensive matter to have replaced it squarely upon the foundation and repaired the slight damage shown. It is hard to understand why plaintiff would sign proofs of loss for a total loss by the tornado, even though those proofs may have been prepared by a representative of the defendant, unless she fully understood that the limit of defendant's liability under both policies was the sum of $2,000. That being true, then it mattered not to her, nor to the defendant, whether the sum of the insurance was paid to her under the one policy or the other, and this brings us to the controlling question in the case.

Under the valued policy law of this state, when insurance is written to insure real property against loss by fire, tornado, or lightning, and the property shall be wholly destroyed without criminal fault on the part of the insured, "the amount of the insurance written in such policy shall be taken conclusively to be the true value of the property insured and the true amount of loss and measure of damages." Rev. St. 1913, sec. 3210. What was the amount of insurance written by the defendant under its two policies issued February 14? Was it $2,000 under each policy, making an aggregate of $4,000 under both, or did the amount stated in one policy constitute the value of the property to be insured, as contemplated by the contracting parties? and was the tornado policy merely an incident to and a part of the fire policy, so that $2,000 in all was the sum upon which the minds of the parties met as the sum which should constitute plaintiff's indemnity in case of her loss of the building by any of the contingencies insured against? We think it is a matter of common knowledge, not only among insurers, but with the insuring public, that insurance for a certain sum against loss or damage by fire or lightning, and for the same sum for loss or damage by tornado, is understood and intended to mean that the insurance by the second policy is not for a sum in

addition to the first, but is the assumption by the insurer of risk from elements not covered by the first policy. When a fire policy is taken on a building, it is not unusual for the insurer to grant additional protection against loss or damage by tornadoes by what is called a "rider" attached to the fire policy, in which the insurer, for a certain additional amount of premium, assumes the risk for damage by tornado; the amount of this additional premium being based upon the extent to which the insured desires the insurer to assume this additional risk. In such a case, it surely would not be claimed that under the valued policy law the insurer could be held liable for both amounts; this, for the reason that the assured can only recover under the provisions of the valued policy law when his building is "wholly destroyed," and, as it could not be wholly destroyed by fire and also wholly destroyed by tornado, there would be no theory upon which the assured could recover under both. The case is entirely different from where two or more insurance companies, each with the consent of the others, write a specific amount of insurance upon a building covering the same liability. In such a case we concede that this court, following other courts, has held: "Where several concurrent policies of insurance upon real property have been written with the consent of the respective companies, and the property insured is wholly destroyed by fire, each company is liable for the full amount of its policy." *Home Fire Ins. Co. v. Weed,* 55 Neb. 146, 151.

That those cases apply only where the several companies assume the same character of risk is made plain by a simple illustration. Suppose two different companies had insured plaintiff's building, company No. 1 against fire or lightning for $2,000, and company No. 2 against tornado for $2,000. Is there any possible theory upon which plaintiff could have recovered from both of those companies under the valued policy act? Clearly she could not. Why? Because the building could not have been "wholly destroyed" by the fire and "wholly destroyed" by the tornado. If one of these elements wholly de-

stroyed the building, the other element certainly could not have wholly destroyed it. In such a case, the burden would have been upon plaintiff to show which of the elements wholly destroyed her property. If she proved that it was wholly destroyed by fire, company No. 1 would have to pay the loss, and company No. 2 would have no liability. If the evidence showed that it was wholly destroyed by the tornado, the situation of the companies would be exactly reversed. We are unable to see any difference between a case where two such policies were written by two different companies, and where they were both written by one. The testimony in the case before us shows, as above stated, that the building was not much damaged by the tornado; yet plaintiff recovered the full sum of $2,000 under the tornado policy on the theory that the building had been wholly destroyed by the tornado. In doing so, she collected a sum largely in excess of what she now says was her actual tornado loss. Under her present testimony, she collected from defendant money which she was bound to know she was not entitled to receive. She should not be permitted to make a false claim and collect it, and then assert the reverse of that claim at a later day, and, when her right to do so is challenged, invoke the strong arm of the law to enable her to enforce it. By asserting a total loss by tornado and collecting the full amount of the policy on the strength of her assertion, she has barred the door of inquiry as to the actual damage by tornado against the defendant. That defendant never intended to assume more than $2,000 liability on her building under both policies is too plain to require discussion, and that she so understood it is equally clear. Defendant knew that it was liable for the amount it had assumed, and it was justified in paying it under either policy upon demand; but there is no reasonable theory upon which it should be required to pay the full amount under each. This would be to make a new contract for the parties and compel defendant to respond in double the amount that either party contemplated

when the contract was entered into. If plaintiff's house was on fire when the tornado struck it, either from a stroke of lightning or from defective wiring, and the fire continued to burn, notwithstanding the shock from the tornado, until it consumed the building, it is possible that plaintiff would have been entitled to recover for a total loss under her fire policy, in which case it would have been error to refuse to submit the question to the jury. If such a case had been presented, then the clause in defendant's policy, which provides that, "if a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease," would have been a proper issue to be also submitted to the jury. But that is not the case we have before us. In the case under consideration, plaintiff is relying upon the valued policy law. She relied upon the statute in collecting the full amount of the tornado policy. She now relies upon the same statute to collect the full amount of the fire policy. As we have already shown, she did not have a single remedy under both policies. Conceding that she had a remedy under either, she would be required to make her election. She made this election promptly, two days after the fire, by asserting her remedy under the tornado policy.

As held in *Dyckman v. Sevatson*, 39 Minn. 132: "One who has voluntarily chosen and carried into effect an appropriate legal remedy, with knowledge of the facts and of his rights, will not, in general, be allowed to afterwards resort to an inconsistent remedy, involving a contradiction of the grounds upon which he before proceeded."

In *Turner v. Grimes*, 75 Neb. 412, 416, after quoting from the opinion in the Minnesota case, we added: "To sustain the present action requires a negation of the facts set forth in the petition in the first action, and having assumed a certain position in this litigation, and having vexed the defendant with a lawsuit based thereupon, he cannot now be permitted to change his position and

harass the defendant with another action based upon another and totally different theory."

The language there used by Mr. Commissioner (now Judge) Letton exactly fits the case at bar. To sustain the present action requires a negation of the facts set forth in plaintiff's proof of loss under her tornado policy, and, having assumed the position then that defendant was liable for the full amount of her insurance under the tornado policy and obtained the same from defendant upon that claim, she cannot now be permitted to change her position and harass the defendant with an action based upon another and totally different theory, viz., that her house suffered little damage from the tornado, but was wholly destroyed by the fire.

The judgment of the district court is right, and it is

AFFIRMED.

ROSE and SEDGWICK, JJ., not sitting.